# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Adam Kristopher Woods, | No. CV 20-01530 PHX JAT (CDB) |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| v. | |
| David Shinn, et al., | |
| Defendants. | |

**TO THE HONORABLE JAMES A. TEILBORG:**

Plaintiff proceeds pro se in this § 1983 action; Plaintiff is no longer in custody. Before the Court is Plaintiff's motion to amend or correct his Complaint. (ECF No. 20).

**I.    Background**

In the service order at ECF No. 6, the Court construed Plaintiff's Complaint as follows:

> In his Complaint, Plaintiff asserts a single claim for inadequate medical care. Plaintiff names Arizona Department of Corrections Director David Shinn, contracted medical provider Centurion Medical, Nursing Director Donna Mendoza, and Dr. Bake as Defendants. Plaintiff is seeking monetary damages and declaratory and injunctive relief.
> Plaintiff alleges that he has suffered "unnecessary & wanton" pain "as a direct result of [Defendant] Shinn's systemic deficiencies in staffing, facilities, and procedures." (Doc. 1 at 3.) Plaintiff claims that after suffering a "significant blow to [his] jaw," he could hardly eat or drink and could not move his jaw without severe pain. (*Id.*) Plaintiff submitted a Health Needs Request form, but the medical staff member he saw failed to conduct an adequate examination or "ask basic questions." (*Id.*) On February 7, 2020,

> Defendant Bake x-rayed Plaintiff's jaw and told him it was broken. Bake advised Plaintiff that he could suffer long-term or permanent damage if his injury was not addressed but "adamantly refus[ed] to take immediate action." (*Id.* at 3-4.) Plaintiff was then sent back to his unit, where Defendant Mendoza "callously informed [him] that [Defendant] Centurion's policy prevented immediate medically corrective action." (*Id.* at 4.) According to Mendoza, a request for a consultation would first have to be submitted. If the request was approved, Plaintiff might see an oral surgeon within three to four weeks.
>
> Plaintiff was "arbitrarily" given only ten days' worth of Tylenol 3, and had to "fight for both 5[-]day[-]long prescriptions." (*Id.*) On March 4, 2020, Plaintiff was taken to an oral surgeon, who told Plaintiff that, "because of the delay[,] there was nothing he could do." (*Id.*) The surgeon said that Plaintiff's broken jaw was healing improperly, resulting in a significant decrease in mobility.

(ECF No. 6 at 3). The Court concluded:

> Plaintiff has not alleged any facts to show that Defendant Shinn personally participated in or was aware of a deprivation of Plaintiff's constitutional rights. Nor does he identify the purported deficiencies in Shinn's policies or explain how Shinn's policies caused Plaintiff harm. Accordingly, Plaintiff has failed to state a claim against Defendant Shinn, and this Defendant will be dismissed without prejudice.

(ECF No. 6 at 5).

The Court further concluded:

> Plaintiff's allegations against Defendant Bake are too vague and conclusory to state a claim against Bake. Although Plaintiff's allegations demonstrate that Bake was aware of Plaintiff's serious medical need, Bake's "refus[al] to take immediate action" is not described in enough detail to satisfy Rule 8's pleading standard. (*Id.* at 4.) Bake appears to have submitted a request for a surgical consultation, and it is not clear what other type of treatment Plaintiff sought, other than medication, which Plaintiff appears to have received. Plaintiff does not allege that Bake knew the surgical consultation would take weeks, nor does he contend that Bake denied any request for pain medication. Plaintiff has therefore failed to state a claim against Defendant Bake, and this Defendant will be dismissed without prejudice.
>
> Plaintiff's allegations against Defendant Mendoza are similarly deficient. While Plaintiff claims that Mendoza described the Centurion's purportedly deficient outside treatment policy, he does not allege any facts to show that Mendoza was aware of a serious medical need. Indeed, it does

> not appear from the Complaint that Mendoza had any knowledge of Plaintiff's injury. Accordingly, Plaintiff has failed to state a claim against Mendoza for deliberately indifferent conduct, and she, too, will be dismissed without prejudice.

(ECF No. 6 at 6).

Plaintiff was given leave to proceed against Defendant Centurion on his claim that he was denied adequate medical care. (ECF No. 6). Centurion was served and answered the Complaint. Discovery in this matter closes November 26, 2021, and dispositive motions are due January 14, 2022.

In his proposed amended complaint Plaintiff names as defendants Centurion, "Dr. Bake," and "Dr. Paul," who is purportedly the "on site Centurian [sic] Medical Administrator." (ECF No. 20-3 at 3). Plaintiff reasserts Count One of his Complaint, a claim for inadequate medical care in violation of the Eighth Amendment. (ECF No. 20-3 at 4). Plaintiff alleges delays in his medical care, including a delay in being seen by Dr. "Baker" and further alleges that he was not taken to the off-site oral surgeon until March 4, 2020. (ECF No. 20-3 at 6).

Plaintiff contends that, after his initial visit with Dr. Baker at the prison following his injury, the doctor prescribed a 5-day course of "generic Tylenol 3's" for Plaintiff's pain and this medication was inadequate to control his pain. He alleges: "Dr. Baker would also prescribe a medical/mechanical soft diet where the only difference between this diet and a regular tray was the replace of cookies for cake. Plaintiff would still have a difficult time eating." (ECF No. 20-3 at 5). Plaintiff alleges he requested a refill after the initial prescribed course of Tylenol expired, which was "originally refused, but Plaintiff would argue with a Dr. Russell until he would finally give in and refill the 'script for 5 more days." (*Id.*). Plaintiff asserts he went without medication from February 17, 2020, until March 4, 2020 when he was seen by "outside medical." (ECF No. 20-3 at 6). Plaintiff argues Dr. Baker's failure to prescribe an adequate course of medication is actionable because "Dr. Baker already knew how it would be weeks before Plaintiff would be taken

to outside medical." (*Id.*). Plaintiff contends that because his facial fracture was not "handled" as an emergency, he was "forced to self-medicate on heroine [sic] . . ." (*Id.*).

Plaintiff states that the Tylenol did not "help" his pain, and that when Plaintiff "made them aware of this fact, so since medical personnel would not prescribe the proper pain medication to him, Plaintiff would be forced to go self-medicate." (ECF No. 20-3 at 5). Plaintiff asserts that, as a result of not being prescribed adequate pain medication, he has become a heroin addict. (ECF No. 20-3 at 5 n.1). Plaintiff contends that Dr. Baker's and Centurion medical staff's "lack of regard" "caused Plaintiff to become a heroine [sic] addict." (*Id.*). Plaintiff explains that he "was both embarrassed and afraid to admit his drug addiction in his Original Complaint. Now he feels Centurian [sic] Medical needs to be held responsible for what he's become due to their complete lack of disregard towards inmates." (*Id.*). Plaintiff alleges that Dr. Baker informed Plaintiff he did not treat his injury as an emergency "based on cost," and he contends Dr. Baker "did not mind forcing Plaintiff to undergo such agony for weeks, just as long as he could save Centurian [sic] and ADOC some money." (ECF No. 20-3 at 8).

With regard to the defendant named as "Dr. Paul," Plaintiff mentions him in the proposed amended complaint in only one sentence: "Now, the Plaintiff finds himself in need of treatment in order to overcome his heroine addiction that Dr. Baker, Centurion Medical Staff, and Dr. Paul – Centurian's [sic] Medical Administrator are responsible for causing." (ECF No. 20-3 at 9).

In his Request for Relief, Plaintiff notes he was released from custody on June 24, 2021, and he seeks punitive damages, his filing fees and court costs, and he "wants Defendants to pay any and all fees associated with any type of drug treatment he must undergo in treating his addiction." (ECF No. 20-3 at 62- 63). He further seeks damages for medical costs and fees, including the cost of prescription medications and dietary supplements, with regard to his anticipated "jaw repair[]." (ECF No. 20-3 at 63). Plaintiff also asks for an award of "Nominal Damages" and seeks declaratory relief. (*Id.*).

In response to Plaintiff's motion to amend, Defendant Centurion asserts:

Plaintiff's Motion fails to include any legal authority or other justification for his request to amend his Complaint to add a claim that Defendants caused him to become addicted to heroin at this stage in the litigation. Because Plaintiff's proposed amendments are futile, his Motion should be denied. Furthermore, to the extent Plaintiff seeks to add claims for injunctive relief, those allegations are now moot because he was released from prison on June 24, 2021.

(ECF No. 25 at 1).

Defendant Centurion further asserts:

On March 4, 2020, Plaintiff was seen by dentist Dr. Ronald Quintia at Southern Arizona Oral & Maxillofacial Surgery, P.C. *See* Medical Record, attached as Exhibit E. In his Proposed FAC, Plaintiff includes a lengthy alleged description of the alleged conversation he had with Dr. Quintia on that date, however, Plaintiff's recollection of that visit is largely contradicted by the medical record. A CT scan indicated Plaintiff had a fracture that was healing reasonably well. *Id.* Dr. Quintia recommended a follow-up within four (4) weeks for an unrelated tooth removal. *Id.* Plaintiff was discharged in "stable and satisfactory condition." *Id.* Notably, Dr. Quintia's record also reflects Plaintiff reported "some drug abuse issues." *Id.*

(ECF No. 25 at 3).[1]

---

[1] Attached to Defendant Centurion's response to the motion to amend are Exhibits A through E. Exhibit A is the Health Needs Request submitted by Woods on February 1, 2020. (ECF No. 25-1 at 2-3). Exhibit B is a Health Services Encounter dated February 1, 2020, indicating Plaintiff was seen by RN Knight. (ECF No. 25-1 at 5-14) This document indicates Plaintiff was assessed on August 27, 2014, with "Comb drug dep NEC-unspec," with an onset date of August 27, 2014. (ECF No. 25-1 at 8). Exhibit C is a Health Services Encounter dated February 7, 2020, detailing Plaintiff's encounter with Dr. Mery, a dentist. (ECF No. 25-1 at 16-21). Dr. Mery also noted, *inter alia*, that Plaintiff was assessed on August 27, 2014, with "Comb drug dep NEC-unspec," with an onset date of August 27, 2014. (ECF No. 25-1 at 17). This report indicates Plaintiff had been prescribed 600 mg of Ibuprofen to be taken three times a day, and that Plaintiff had received a seven-day supply of that medication; it also indicates Plaintiff was prescribed a one-day supply of acetaminophen with codeine, but the prescription was "On Hold at Pharmacy. Pharmacy faxed message with detail (OH)." (ECF No. 25-1 at 19). Exhibit D is a Health Services Encounter dated February 12, 2020, indicating Plaintiff was seek by Dr. Baik, a dentist. (ECF No. 25-1 at 23-29). Dr. Baik noted, *inter alia*, that Plaintiff was assessed on August 27, 2014, with "Comb drug dep NEC-unspec," with an onset date of August 27, 2014. (ECF No. 25-1 at 25). This report indicates Plaintiff had been prescribed a six-day supply of acetaminophen with codeine, 300 mg to be taken twice daily, but the prescription was "On Hold at Pharmacy. Pharmacy faxed message with detail (OH)." (ECF No. 25-1 at 27). This report further notes: "RX: Tylenol #3 I/M will go to OS NV: Post op after OS OHI given." (ECF No. 25-1 at 28). Exhibit E is reevaluation report submitted by Ronald Quintia, D.D.S, dated June 2, 2020. (ECF No. 25-1 at 31-32). Dr.

## II. Governing Law

Rule 15(a) of the Federal Rules of Civil Procedure provides a plaintiff should be given leave to amend their complaint when justice so requires. Granting or denying leave to amend is a matter committed to the Court's discretion. *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1129 (9th Cir. 2013).

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(c)(1), requires the screening of prisoner complaints and the dismissal of allegations that fail to state a claim upon which relief can be granted prior to ordering service of an amended complaint on the defendants. *See*, *e.g.*, *O'Neal v. Price*, 531 F.3d 1146, 1153 (9th Cir. 2008). Futility of amendment is sufficient to justify denial of a motion for leave to amend. *See Gordon v. City of Oakland*, 627 F.3d 1092, 1094 (9th Cir. 2010). A proposed amended complaint is futile if, accepting all of the facts alleged as true, it would be immediately "subject to dismissal" for failure to state a claim on which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998); *Riverview Health Inst. LLC v. Medical Mutual of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010). The Court is obliged to liberally construe an incarcerated *pro se* plaintiff's complaint. *See*, *e.g.*, *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). However, although the Court must liberally construe Plaintiffs' pro se complaint liberally, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim

---

Quintia notes he previously saw Plaintiff in March 2020 and that in March he did not "feel, that interventional surgery, was necessary for this patient. (ECF No. 25-1 at 31). Dr. Quintia then noted that the "authorization for the tooth removal, has been crossed out on the form that was sent us as a referral," further opining that the tooth was "a real problem," and the assessment states: "For whatever reason, tooth #19, which was on the referral to be taken out today, has been crossed out, so our assumption is that the DOC plans to take that tooth out on their own." (*Id.*). He then further states:

> My opinion, is that they do this rather soon. The patient is already somewhat compromised because of his fracture, and with this very sharp tooth being present, its hard to imagine that once he goes to a regular diet that that tooth might be subject to break, and cause even more problems than it is at this point.

(*Id.*). Dr. Quintia does not, in this "Reevaluation," which is the sole document at Exhibit E to Defendant's pleading at ECF No. 25, make any reference to "some drug abuse issues."

that were not initially pled." *Ivey v. Board of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). Although Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A claim is plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Therefore, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, the reviewing court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

To state a cognizable claim for relief pursuant to § 1983, a plaintiff must allege facts sufficient to establish: (1) an act by the named defendant; (2) taken under color of state law; (3) which deprived the plaintiff of a federal right; and (4) caused him damage. *E.g.*, *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005). Additionally, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant, and he must allege an affirmative link between the cognizable injury and the conduct of that defendant. *E.g.*, *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

Although pro se pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action. *Ivey*, 673 F.2d at 268. Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. *Id.*

Not every claim by a prisoner relating to inadequate medical treatment states a violation of the Eighth Amendment. To state a § 1983 medical claim, a plaintiff must show

(1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. *Jett*, 439 F.3d at 1096. Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by the way prison doctors respond to the prisoner's medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Jett*, 439 F.3d at 1096.

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Farmer*, 511 U.S. at 835. "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. California Dep't of Corr.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002). *See also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983). "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

### III. Conclusion

Plaintiff's one-sentence allegation against "Dr. Paul" is too vague and conclusory to state a claim against this individual.

Plaintiff's proposed amendments with regard to Dr. Bake (also referred to as Dr. "Baker," and whose actual name appears to be "Baik"), do not cure the deficiencies noted in the screening order at ECF No. 6. Plaintiff fails to allege facts sufficient to state an adequate claim that Dr. Bake's actions rose to the level of an unnecessary and wanton infliction of pain. Additionally, Plaintiff has not stated a plausible claim that this individual and Centurion caused Plaintiff to become addicted to heroin. As argued by Defendant Centurion, a more likely "cause of Plaintiff's alleged addiction to heroin was his personal choice to ingest heroin" (ECF No. 25 at 6), rather than any alleged deliberate indifference by any named invididual or Centurion.

Accordingly,

**IT IS RECOMMENDED that** Plaintiff's amended motion to amend his complaint (ECF No. 20) be **denied**.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Court's judgment.

The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72. Thereafter, the parties have fourteen days within which to file a response to the objections. Pursuant to Rule 7.2(e)(3) of the Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed ten (10) pages in length.

Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114,

1121 (9th Cir. 2003). Failure to file timely objections to any factual determinations of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.

Dated this 27th day of July, 2021.

Camille D. Bibles
United States Magistrate Judge