JL

WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Adam Kristopher Woods,<br>           Plaintiff,<br>v.<br>David Shinn, et al.,<br>           Defendants. | No. CV 20-01530-PHX-JAT (CDB)<br><br>**ORDER** |

Plaintiff Adam Kristopher Woods brought this pro se civil rights action pursuant to 42 U.S.C. § 1983. Defendant Centurion moves for summary judgment. (Doc. 30.) Plaintiff was informed of his rights and obligations to respond pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc) (Doc. 31), and he did not file a response.

The Court will grant the Motion for Summary Judgment.

**I.  Background**

Plaintiff's claim arose during his confinement in Arizona Department of Corrections. (Doc. 1.)[1] On screening the Complaint under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated an Eighth Amendment medical care claim in Count One against Defendant Centurion and directed Centurion to answer the claim. (Doc. 6.) The Court dismissed the remaining claims and Defendants. (*Id.*)

. . . .

---

[1] Plaintiff was released from custody in June 2021. (Doc. 21.)

**II.     Summary Judgment Standard**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

. . . .

. . . .

. . . .

### III. Facts[2]

At the relevant time, Plaintiff was incarcerated at the Arizona State Prison Complex (ASPC)-Tucson. Plaintiff suffered a "significant blow to [his] jaw" and was in tremendous pain. (Doc. 1 at 3.)[3] He could hardly talk, eat, or drink or move his jaw in any way without severe pain. (*Id.*) On February 1, 2020, Plaintiff submitted a Health Needs Request (HNR) stating he had been "hit in the jaw playing basketball," that he could not open his mouth all the way, and that he thought his jaw might be fractured. (Doc. 31-1 at 9.) Plaintiff saw a nurse the same day, who evaluated Plaintiff, took his vital signs, and ordered an x-ray. (*Id.* at 12.) The nurse observed swelling on the left side of Plaintiff's jaw near his ear. (*Id.*)

On February 7, 2020, Plaintiff saw Dr. Bake for an x-ray of his jaw. (Doc. 1 at 3.) Dr. Bake told Plaintiff his jaw was broken and that he could suffer long-term or permanent damage if his injury was not addressed. (*Id.*) However, Dr. Bake "adamantly refus[ed] to take immediate action." (*Id.*) According to Plaintiff's medical records, the February 7, 2020 x-ray showed a fracture of the mandibular alveolus. (Doc. 31-1 at 25.) Plaintiff was prescribed ibuprofen 600 mg and Tylenol #3 with codeine for pain. (*Id.* at 26.)

After Plaintiff returned to his unit, Nurse (?) Donna Mendoza informed him that Defendant Centurion's policy "prevented immediate medically corrective action," a consultation request must be submitted, and if the request was approved, Plaintiff "might see an oral surgeon" in three weeks to a month. (Doc. 1 at 4.) According to Plaintiff's medical records, an urgent consultation for off-site oral surgery was submitted and approved. (Doc. 31-1 at 30.)

On March 4, 2020, Plaintiff saw Dr. Ronald Quintia at Southern Arizona Oral & Maxillofacial Surgery, P.C. (*Id.* at 32.) Dr. Quintia told Plaintiff that "because of the

---

[2] Because Plaintiff did not file a response or controverting statement of facts, the Court will consider Defendants' supported facts undisputed unless they are clearly controverted by Plaintiff's first-hand allegations in the verified Complaint or other evidence on the record. Where the nonmovant is a pro se litigant, the Court must consider as evidence in opposition to summary judgment all the nonmovant's contentions set forth in a verified complaint or motion. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

[3] The citation refers to the document and page number generated by the Court's Case Management/Electronic Case Filing system.

delay[,] there was nothing he could do" and that his broken jaw was healing improperly, resulting in a significant decrease in mobility. (Doc. 1 at 4.) According to Plaintiff's medical records, Plaintiff reported getting better each day. (Doc. 31-1 at 32.) Dr. Quintia noted that the jaw fracture was "healing reasonably well" and was stable. (*Id.*) Dr. Quintia recommended that Plaintiff remain in isolated housing for four weeks and follow up for the removal of a decayed tooth, which was unrelated to the jaw fracture. (*Id.*) Plaintiff was discharged in "stable and satisfactory condition." (*Id.*) Dr. Quintia did not recommend surgery, and no "permanent" injuries due to the timing of the oral surgeon's initial consultation, or for any other reason, were noted. (*Id.*)

On June 2, 2020, at ASPC-Lewis, Plaintiff saw Dr. Mark Mery. (*Id.* at 99.) Dr. Mery noted that Plaintiff's condyle fracture was still healing and that, per the oral surgeon, Plaintiff should have a mechanical soft diet and liquid supplements while healing. (*Id.*) Dr. Mery observed that one of the roots may be fractured and the beginnings of an abscess. (*Id.*) Plaintiff stated the tooth was not "bothering him at the moment." (*Id.*)

On October 26, 2020, Plaintiff submitted an HNR reporting left side jaw pain and requesting pain medication. (*Id.* at 35.) He was seen the same day on the nurse line and scheduled to see the dentist. (*Id.* at 37.) Plaintiff saw Dr. Russell the next day, who took an x-ray of Plaintiff's jaw and noted, "The L-subcondylar fracture of the mandible is healing [within normal limits]" and that Plaintiff had "continuous[ly] talk[ed] without any sign of discomfort or pain" in the eight months since the original trauma. (*Id.* at 53.) No additional follow-up was recommended. (*Id.*)

On December 8, 2020, Plaintiff submitted another HNR reporting "trouble [and] pain" in his jaw and that the ibuprofen was not working. (*Id.* at 57.) Plaintiff was seen on the nurse line the same day. (*Id.* at 58.) He was prescribed naproxen and a topical cream for pain. (*Id.* at 64.)

On June 2, 2021, Plaintiff submitted an HNR stating, "med do not work lately" and reporting that his jaw was popping and causing more pain. (*Id.* at 70.) Plaintiff was seen

on the nursing line on June 4, 2021 and referred to the dentist. (*Id.* at 72.) On June 8, 2021, Dr. Russell evaluated Plaintiff for his reported left jaw pain. (*Id.* at 83.) Dr. Russell noted,

> A review of the information concerning the incident surrounding the so-called basketball hitting the side of his jaw and fracturing it, is totally different from the story that he is conveying to the staff and the result of the [oral surgeon] visit is completely different than what was communicated to the staff now and earlier. Furthermore, the [oral surgeon's] evaluation confirms that the details of the trauma and when it was supposed to have occurred is now different than what is being communicated today.

(*Id.*) Dr. Russell conducted a TMJ screening evaluation and determined that Plaintiff had lost his right-side molars, which contributed to his reported discomfort. (*Id.* at 87.) Dr. Russell prescribed ibuprofen 600 mg. (*Id.*) Subsequently, Plaintiff was released from custody.

## IV.   Discussion

### A.   Legal Standards

To support a § 1983 claim against a private entity performing a traditional public function, such as providing medical care to prisoners, a plaintiff must allege facts to support that his constitutional rights were violated as a result of a policy, decision, or custom promulgated or endorsed by the private entity. *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138–39 (9th Cir. 2012) (extending the "official policy" requirement for municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978), to private entities acting under color of law). Under *Monell*, a plaintiff must show: (1) he suffered a constitutional injury; (2) the entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to the plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional injury. *See Monell*, 436 U.S. at 691–94; *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001).

To support a medical care claim under the Eighth Amendment, a prisoner must demonstrate "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d

1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). There are two prongs to the deliberate-indifference analysis: an objective standard and a subjective standard. First, a prisoner must show a "serious medical need." *Id.* (citations omitted). A "'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal citation omitted). Examples of indications that a prisoner has a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* at 1059–60.

Second, a prisoner must show that the defendant's response to that need was deliberately indifferent. *Jett*, 439 F.3d at 1096. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they 'deny, delay or intentionally interfere with medical treatment.'" *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) (quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988)). Deliberate indifference may also be shown where prison officials fail to respond to a prisoner's pain or possible medical need. *Jett*, 439 F.3d at 1096. "In deciding whether there has been deliberate indifference to an inmate's serious medical needs, [courts] need not defer to the judgment of prison doctors or administrators.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989)).

Mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). However, a physician need not fail to treat a prisoner altogether in order to violate that prisoner's Eighth Amendment rights. *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314

(9th Cir. 1989). A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. *Id.*

Even if deliberate indifference is shown, to support an Eighth Amendment claim, the prisoner must demonstrate harm caused by the indifference. *Jett*, 439 F.3d at 1096; *see Hunt*, 865 F.2d at 200 (delay in providing medical treatment does not constitute Eighth Amendment violation unless delay was harmful).

**B.     Analysis**

**1.     Serious Medical Need**

Defendant argues "there is no evidence that Plaintiff has been denied appropriate medical care or is suffering from a serious medical need at this time that is not being addressed." (Doc. 30 at 8.) However, the question is whether Plaintiff suffered from a serious medical need at the time of the conduct alleged in the Complaint. The evidence in the record shows that Plaintiff suffered a fractured jaw that caused him pain and warranted consultation with an oral surgeon. The record is sufficient to support the existence of a serious medical need. *See McGuckin*, 974 at 1059–60.

**2.     Response to Serious Medical Need**

With respect to the second prong, a plaintiff must first show that the defendant was "subjectively aware of the serious medical need[.]" *Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017–18 (9th Cir. 2010) (quotation and citation omitted). Then, the plaintiff must show: (1) a purposeful act or failure to respond to a prisoner's pain or possible medical need; and (2) harm caused by the indifference. *Jett*, 439 F.3d at 1096. A plaintiff may meet the harm requirement by demonstrating that the defendant's actions or policies expose the plaintiff to a "substantial risk for serious harm." *Parsons v. Ryan*, 754 F.3d 657, 677 (9th Cir. 2014).

The available evidence establishes that Defendant did not fail to respond to Plaintiff's medical need. Plaintiff saw a nurse the same day he reported the injury to his jaw, and he underwent x-rays six days later. Plaintiff's medical records indicate that he was prescribed two medications—ibuprofen and Tylenol #3 with codeine—for his pain,

1 and an urgent consultation for offsite oral surgery was submitted and approved.

2 Plaintiff saw Dr. Quintia less than one month later, at the earliest available appointment. Plaintiff's medical records indicate that Dr. Quintia did not tell Plaintiff there was "nothing he could do" and that his broken jaw was healing improperly; rather, according to Plaintiff's records, Dr. Quintia noted that the jaw fracture was "healing reasonably well" and was stable. Dr. Quintia did not document any recommendation for surgery or any permanent injuries due to the one-month delay in the consultation.

Several months after Plaintiff filed the Complaint in this case, he saw Dr. Russell, who noted that the jaw fracture was healing within normal limits and that in the eight months since the injury, Plaintiff had continuously talked without any sign of discomfort or pain. By failing to respond to Defendant's Motion for Summary Judgment, Plaintiff has failed to adduce any evidence to contradict the evidence in his medical records.

Based on the available evidence, the Court finds Defendant responded reasonably to Plaintiff's serious medical need. Thus, the Court need not consider whether Plaintiff suffered any harm attributable to Defendant. The Court finds there is no genuine dispute of material fact regarding whether Plaintiff suffered an Eighth Amendment injury.

In light of the conclusion that there was no injury attributable to Defendant Centurion, the Court need not consider whether Defendant maintained a policy, custom, or practice that resulted in Plaintiff's injury.

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendant's Motion for Summary Judgment (Doc. 30).

. . . .

. . . .

. . . .

. . . .

1  　　　　(2)　　Defendant's Motion for Summary Judgment (Doc. 30) is **granted**, and the
2  action is terminated with prejudice.  The Clerk of Court must enter judgment accordingly.
3  　　　　Dated this 2nd day of September, 2022.

_____
James A. Teilborg
Senior United States District Judge